UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRYANT LOVE, )<br>)<br>Defendant. ) | NO. 2:17CR2-PPS |

## OPINION AND ORDER

Bryant Love is charged with two counts of distributing crack cocaine on December 8 and December 15, 2016, and with possessing crack cocaine with intent to distribute on December 20, 2016. He is also charged with being a felon in possession of a firearm. Love has moved to suppress evidence seized during the December 20 execution of a search warrant at his residence, claiming that the search was not supported by probable cause. He also seeks a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

On December 19, 2016, the government applied for a warrant to search what was described as the "Upstairs Apartment" at 1302 W. 150th Street in East Chicago, Indiana, for "evidence, fruits and instrumentalities" of drug trafficking. [DE 46 at 13.] The affidavit of FBI Task Force Officer Christopher Gootee was submitted in support of the application. [*Id.* at 16.] United States Magistrate Judge John Martin issued the warrant at 3:10 p.m. on December 19. [*Id.* at 26.] On December 20, federal agents executed the search warrant and seized items including plastic baggies containing what was

suspected to be marijuana and cocaine, several digital scales, several pistols and currency. [*Id*. at 2.]

Love acknowledges that the warrant was sought after controlled buys of crack cocaine were made from Love by a confidential informant. There were two transactions, each involving a CI purchasing 1.9 grams of crack cocaine from Love for $150. [*Id*. at 2.] The first controlled buy took place on December 8, 2016, and the second on December 15. [*Id*.] Both transactions took place at a Subway restaurant at 150th and Indianapolis Boulevard in East Chicago, and both were audio and video recorded. [*Id*.] The CI attempted to arrange a third buy on December 12, but his phone call to Love went unanswered and no transaction occurred. [*Id*.]

The apartment targeted in the search warrant was identified as the apartment of Love's girlfriend, Amanda Matthews. [DE 46 at 19, ¶8.] Gootee's affidavit attests that on December 8, approximately 4 minutes prior to meeting with the CI to make the sale of crack cocaine, Love "was observed by Investigators departing the area of" the apartment. [*Id*. at 20, ¶13.] Concerning "Controlled Purchase #2," the affidavit reported that investigators conducting surveillance saw Love use a key to enter the apartment building for a short time before driving to the Subway to make the sale to the CI. [*Id*. at ¶15.] The affidavit mistakenly uses the date of December 12 to describe the second controlled buy, when it in fact occurred on December 15. [*Id*. at ¶14.] Recall that there was an aborted attempted undercover buy from Love on December 12th and perhaps that is the source of the confusion in the dates.

In addition to Love being seen by law enforcement leaving the apartment just prior to one of the undercover buys (and in the area of the apartment on the other), Gootee's affidavit attempts to link Love with the apartment in another way. The affidavit notes that on December 3, 2016, less than a week before the first controlled buy, Amanda Matthews had reported a home invasion and robbery at the apartment. [DE 46 at 19, ¶8.] According to the affidavit, "[r]eports authored by East Chicago Police Officers indicate that both Matthews and Love have been uncooperative with the investigation." [*Id.*]

## Legal Standards

"A search warrant affidavit establishes probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Gregory*, 795 F.3d 735, 741 (7th Cir. 2015) (citation omitted). Where the issuance of a search warrant is based entirely on an affidavit, "the validity of the warrant depends solely on the strength of the affidavit." *United States v. Johnson*, 867 F.3d 737, 741 (7th Cir. 2017), citing *United States v. Carson*, 582 F.3d 827, 831-32 (7th Cir. 2009). A reviewing court gives "great deference" to the conclusion of the issuing judge that there was probable cause to support the warrant. *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2009).

Under *Franks*, a defendant is entitled to an evidentiary hearing on the truthfulness of information submitted in a search warrant application if he can make a "substantial preliminary showing" that there were false statements in the warrant

3

affidavit, that the untruths were intentional or made with reckless disregard of the truth, and that the false statements were "material to the finding of probable cause." *United States v. Mullins*, 803 F.3d 858, 861-62 (7th Cir. 2015). But if a finding of probable cause is supported even without the false statements, "a hearing is unnecessary and the motion should be denied." *Id*. at 862.

## Discussion

Love's motion to suppress raises four arguments. The first is Love's assertion that Gootee's affidavit is insufficient to establish that Bryant Love resided in the apartment. This argument misses the mark. The legitimacy of the warrant did not turn on whether Love resided in the apartment, but on whether there existed probable cause to believe evidence relating to drug dealing would be found in the apartment. "The task of the issuing judge 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him,…there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Reichling*, 781 F.3d 993, 887 (7th Cir. 2015), quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

The affidavit here could of course have been drafted with greater specificity and precision. As for one drug transaction, it offers evidence that Love was seen "departing the area of the Premises" approximately four minutes prior to meeting the CI to sell him drugs. [DE 46 at 20, ¶13.] But concerning the second controlled buy, the affidavit is more detailed, attesting that officers conducting surveillance saw Love enter the

4

premises with a key, stay inside the premises for a short period of time and then drive directly to the drug transaction. [*Id*. at 21, ¶15.] Whether or not Love resided in the apartment, the affidavit presented facts indicating that Love had access to the apartment and had entered the building just before engaging in a drug transaction on one occasion and had, on the occasion of an identical drug transaction, also been seen driving from the apartment to his meeting with the CI.

To further link Love with a particular apartment within the building, the affidavit offers evidence of a relationship with Amanda Matthews, whose residence in the upstairs apartment is documented in a police report of a home invasion and robbery reported to the East Chicago Police five days before the CI's first controlled buy from Love. [DE 46 at 19, ¶8.] Love takes issue with the affidavit's assertion that Matthews was his girlfriend. But that's neither here nor there. The issuing magistrate did not need to demand proof of the nature of Love's and Matthews' relationship to take into account that a very recent police report reflected that Love had *some* connection to the apartment in question.

The sufficiency of the allegations supporting probable cause is assessed based on the "totality of the circumstances." *United States v. Hancock*, 844 F.3d 702, 708 (7th Cir. 2016), quoting *Mullins*, 803 F.3d at 861. The existence of a connection between Love and the apartment was what mattered in the present context, not the nature of his relationship with Matthews. Love was seen leaving the apartment building on two occasions prior to drug deals and he was further connected to the building through the

earlier police report. That's all that matters. A judge issuing a warrant has "license to draw reasonable inferences concerning where the evidence referred to in the affidavit is likely to be kept, taking into account the nature of the evidence and the offense." *Reichling*, 781 F.3d at 887 (citation omitted). Love's quibble about the nature of his relationship with Matthews fails to knock out the probable cause finding underpinning the warrant.

Next Love contends that, either intentionally or with reckless disregard for the truth, Gootee made false statements in paragraphs 14, 15 and 16 of his affidavit, all based on his erroneous reference to December 12 as the date of the second controlled buy. This argument does not bear fruit for at least two reasons. First, the date of the second controlled buy, whether December 12 or December 15, is not shown to be material to the probable cause determination. Whenever it occurred, the second transaction occurred, and the affidavit fully supported that it had been transacted by Bryant Love after a visit to 1302 W. 150th Street. Where the finding of probable cause is supported even without the false statement as to the date, "a hearing is unnecessary and the motion should be denied." *Mullins*, 803 F.3d at 862.

Second, the misstatement of the date is not shown to have been deliberately or recklessly false, as opposed to a mere typographical error. It was likely borne out of the fact that there had been an aborted attempted buy from Love on December 12th, and the officer used the aborted date by mistake instead of the actual date of the second buy, December 15th. In all events, Love does not identify any particular advantage to be

gained by Gootee's mistake as to the date. The affidavit's error as to the date of the second controlled buy does not support granting a *Franks* hearing, and does not impact the probable cause for the warrant.

Love's third challenge to the search warrant is that Gootee intentionally or recklessly omitted facts material to the probable cause determination. The first such omission is that law enforcement surveillance of the apartment had not observed the sort of human traffic ordinarily associated with narcotics sales. Next, Love observes that Gootee's affidavit fails to mention that law enforcement conducted trash pulls for the apartment but that no illegal substances or associated materials were found. Last, Love points out that Gootee's affidavit omits that the CI informed the agents that he had never purchased drugs at the 150th Street apartment.

*Franks* "applies to omissions as well as affirmative misrepresentations." *Hancock*, 844 F.3d at 708, citing *Mullins*, 803 F.3d at 862. But when relying on omissions, the defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990). This Love cannot and does not do. All three of these omissions would relate to drug sales *occurring at* the apartment. But the police investigation reported in the warrant application was based on drug sales *at another location*, and did not rely on information suggesting that Love sold drugs at the apartment. That being the case, Love fails to show that Gootee had any reason, much less obvious reasons, for omitting

7

these "facts," even if proven to be true.[1] Love's "omissions" argument does not warrant a *Franks* hearing.

The final argument of Love's suppression motion is that the cumulative effect of the false statements in the affidavit plus the material omissions he has identified defeats any showing of probable cause and invalidates the warrant. I am not so persuaded. The determination of probable cause to search the apartment is not undermined by doubt about the nature of Love's relationship with Amanda Matthews, the mistake in the date of the second drug transaction, or the alleged omissions of evidence relating to drug trafficking from the building, whether those factors are considered singly or in combination. Instead, I am persuaded based on the evidence linking Love to the upstairs apartment and demonstrating that he visited the building immediately prior to drug sales, that the warrant was supported by a practical, common-sense decision that there was a fair probability that contraband or evidence of a crime would be found in the apartment, as the Fourth Amendment requires. *Gates*, 462 U.S. at 238.

ACCORDINGLY:

Defendant Bryant Love's motion to suppress [DE 45] is DENIED.

SO ORDERED.

ENTERED: October 3, 2017.      /s/ Philip P. Simon
                                                                  PHILIP P. SIMON, JUDGE

---

[1] At oral argument, counsel for the government represented that Gootee would testify that the investigators did not do surveillance to monitor traffic at the building, that there were no trash pulls, and that there was no discussion with the CI that he didn't buy drugs from Love at the building or know where Love lived.

UNITED STATES DISTRICT COURT